UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

           Plaintiff,

      v.

JAZZ SVARDA,

           Defendant.

Case No.  3:20-cr-00329-JD-2

**ORDER RE MOTION TO SUPPRESS**

Re: Dkt. No. 48

      Defendant Jazz Svarda moves to suppress evidence related to a detention, search, and arrest.  Dkt. No. 48 at 1.  Svarda did not request an evidentiary hearing, and the Court has resolved the motion on undisputed facts.  Consequently, an evidentiary hearing was not warranted.  *See United States v. Miller,* Case No. 15-cr-00197 JD, 2016 WL 80565, at *1 (N.D. Cal. Jan 7, 2016), *aff'd*, 694 Fed App'x 609 (9th Cir 2017) (unpublished).  The motion is denied.

**DISCUSSION**

**I.     THE DECEMBER 6, 2018 EVENTS**

      Svarda challenges his detention, the search of his car and person, and his arrest on December 6, 2018, by Sgt. Phillip Haymond and Officer Ryan Thomson of the San Francisco Police Department (SFPD).  Dkt. No. 48 at 1.  Svarda says his detention was not supported by a reasonable suspicion of criminal activity, which rendered his subsequent arrest and the search of his car unconstitutional.  *Id*. at 7, 9.

      The salient facts are straightforward and undisputed.  At approximately 4:30 p.m. on December 6, 2018, Sgt. Haymond and Officer Thomson and were on routine patrol in the Tenderloin, and received a crime alert email from SFPD Sgt. Carla Hurley about a robbery of a Walgreens pharmacy that had happened on November 21, 2018.  Dkt. No. 51-3 ¶ 6 (Thomson

United States District Court
Northern District of California

Decl.).  The crime alert described the "getaway car" as a four door Acura TL with a moonroof.  *Id*. at ¶ 7.  It indicated that the Acura had black tire rims, which stood out to Officer Thomson because most cars do not come with black rims.  *Id*.  The alert provided a physical description of two suspects, and noted that one suspect had threatened to use a firearm during the robbery.  *Id*. at ¶8. The alert also identified what Officer Thomson considered to be a large amount of controlled substances stolen from the pharmacy.  *Id*.

In addition to the written description of the car, the crime alert included a link to surveillance videos that showed the Acura on the day of the robbery.  Dkt. No. 51-4 ¶ 7 (Haymond Decl.).  Sgt. Haymond watched the video and noticed that the hood of the car appeared to be a slightly different color than the rest of the car.  *Id*. at ¶ 8.  Sgt. Haymond found the crime alert distinctive because of the weapon threat, *id*. at ¶ 6, and because the quantity of controlled substances that were stolen exceeded amounts associated with personal use, *id*. at ¶ 9.

The crime alert indicated that the suspect Acura had a white decal in the dash, a spare tire on the front drivers side, and something pink tied to the windshield wipers.  Dkt. No. 49-1 at ECF 2.

The officers spotted a grey Acura TL with a moonroof parked on Hyde Street at approximately 6:30 p.m.  Thomson Decl. ¶ 9.[1]  The location was significant to Sgt. Haymond because it was along the path that another SFPD investigator had traced for the car involved in the robbery.  Haymond Decl. ¶ 10.  Officer Thomson pulled up the crime alert on his phone to compare the Acura to the pictures, and confirmed it appeared to be the same car.  Thomson Decl. ¶ 9.  Because the parked Acura was the same make and model as in the crime alert and the video, and had the same color, moonroof, and tire rims, the officers stopped to investigate, parking their car to ensure that the Acura was not blocked from exiting.  Thomson Decl. ¶¶ 9-10; Haymond

---

[1] Svarda suggests that the police were confused because Officer "Thomson stated at the preliminary hearing that he observed a four door gold colored Acura."  Dkt. No. 56 at 2 n.1.  A better explanation is that this was a minor slip of the tongue.  Reports from the night of the incident describe the car as grey, as do the declarations later submitted by Sgt. Haymond and Officer Thomson.  *See* Thomson Decl. ¶ 9; Haymond Decl. ¶ 10; Dkt. No. 49-2 at ECF 7. Bodycam footage from December 6, 2018, also shows that the car was grey.  Dkt. No. 51-6. Svarda has not provided any evidence that car was gold.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Decl. ¶ 10-11.  They did not activate the patrol lights on their car, but did activate the traffic lights.

2   Thomson Decl. ¶ 10.

3   As they approached the car on foot, the officers noticed that there was a white decal in the

4   driver's side front windshield area, and that the hood of the car was a slightly different color than

5   the rest of the vehicle.  Thomson Decl. ¶ 11; Haymond Decl. ¶ 12.  The officers recognized that

6   there was no spare tire on the car, or anything pink tied to the windshield wiper.  Thomson Decl.

7   ¶ 12; Haymond Decl. ¶ 13.  Both officers knew that spare tires are meant to be used briefly and the

8   spare tire could have been replaced between November 21, 2018, and December 6, 2018, so they

9   thought it made sense that the spare tire was not present.  Thomson Decl. ¶ 12; Haymond Decl.

10  ¶ 13.  The officers also thought that the pink item on the windshield wiper could have been

11  removed or blown away.  Thomson Decl. ¶ 12; Haymond Decl. ¶ 13.  They focused on the parts of

12  the car that were less readily changeable, such as the rims, hood, and color, and concluded that the

13  Acura was the same as the one in the crime alert.  Thomson Decl. ¶ 12; Haymond Decl. ¶ 13.

14  As they approached the Acura, the officers saw Svarda inside and apparently asleep.

15  Thomson Decl. ¶ 13.  Officer Thomson was surprised to see Svarda because he had assumed the

16  parked car was not occupied.  *Id.*  Svarda did not react when the officers approached the car.  *Id.*

17  Officer Thomson used his flashlight to look into the car to check for weapons because he and Sgt.

18  Haymond intended to wake Svarda, and the crime alert stated that one of the suspects made threats

19  of having a firearm at the pharmacy.  *Id.*

20  When Officer Thomson looked into the car, he saw a baggie of white powder in plain view

21  on the floor of the car, which he concluded could be cocaine.  *Id.* at ¶ 14.  Officer Thomson had

22  worked as an officer in the Tenderloin for over two years and had handled at least 50

23  investigations involving the possession and sale of cocaine in the Tenderloin.  *Id.* at ¶ 5.  Officer

24  Thomson alerted Sgt. Haymond to the bag, and Sgt. Haymond confirmed that the bag appeared to

25  contain cocaine.  Haymond Decl. ¶ 15.  Sgt. Haymond had been working in the Tenderloin for six

26  years, and had handled at least 100 investigations involving possession or sale of cocaine.

27  Haymond Decl. ¶ 5.  Officer Thomson thought that the bag contained more than an amount

28  consistent with personal use.  Thomson Decl. ¶ 14.  Although the officers did not see any other

3

drug paraphernalia in the car, they knew from their experience that drug dealers often store drugs underneath car seats to conceal them from law enforcement.  Thomson Decl. ¶ 14; Haymond Decl. ¶ 15.

Additional SFPD officers arrived with activated traffic lights and parked in front of the Acura, but still with enough room for it to drive away.  Thomson Decl. ¶ 15.  The officers decided to wake Svarda for identification, investigate the connection of the Acura to the robbery, and possibly arrest Svarda for the drugs in the baggie.  Haymond Decl. ¶ 17.  Before they woke Svarda, the officers activated their body cameras, which recorded their subsequent interactions with him.  Thomson Decl. ¶ 14; Haymond Decl. ¶ 15; Dkt. No. 51-6.  Sgt. Haymond tapped on the driver's side window and gestured for Svarda to roll down his window.  Haymond Decl. ¶ 18.  Svarda rubbed his eyes but did not roll down the window.  *Id*.  Sgt. Haymond again tapped on the window with his flashlight and asked Svarda to open the car door.  *Id*.

The officers continued to ask Svarda to open the door, and warned that they would break the window if he did not.  *Id*.  Svarda started fidgeting, grabbing his keys and phone from the central console, and placing his hands in his pocket.  *Id*.; Thomson Decl. ¶ 17.  After several minutes, the officers gave Svarda a final warning, and then Sgt. Haymond used his flashlight to break the drivers side window, manually unlocked the door, and removed Svarda from the front seat.  Haymond Decl. ¶ 19.  The officers placed Svarda under arrest for possession of cocaine and resisting lawful orders and delaying the investigation.  *Id*.

Sgt. Haymond and another officer searched Svarda and found a digital scale, additional drugs, and United States currency.  *Id*. at ¶ 20.  Sgt. Haymond's search of Svarda was recorded on his body camera.  Dkt. No. 51-6.  Officer Thomson searched Svarda's car and found the bag of cocaine they had seen on the floor, as well as several additional bags of cocaine and other controlled substances, including oxycodone pills, and a black ski mask.  Thomson Decl. ¶ 19.  Officer Thomson's search of the car was recorded on his body camera.  Dkt. No. 51-6.  The car was impounded due to the broken window, which made it an easy target for theft and vandalism, and because no one else was present to move it after Svarda was arrested.  Haymond Decl. ¶ 22.

4

1   Sgt. Haymond contacted Sgt. Hurley to notify her that they had located the Acura in the crime

2   alert, and transported Svarda to the Tenderloin Station at Sgt. Hurley's request. *Id*. at ¶ 21.

3   **II.      THE OFFICERS HAD REASONABLE SUSPICION TO DETAIN SVARDA**

4           Svarda does not contend that Officer Thomson and Sgt. Haymond's initial approach of the

5   car was an unlawful detention.  The Fourth Amendment's protections are not triggered when law

6   enforcement officers approach individuals to ask questions in public settings.  *See Muehler v.*

7   *Mena*, 544 U.S. 93, 101 (2005) ("We have 'held repeatedly that mere police questioning does not

8   constitute a seizure.'") (quoting *Florida v. Bostick*, 501 U.S. 429 424 (1991)); *United States v.*

9   *Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994).  This applies to law enforcement officers approaching a

10  person in a parked car in a public space.  *United States v. Summers*, 268 F.3d 683, 687 (9th Cir.

11  2001) (citing *Kim*, 25 F.3d at 1430).  But an initially consensual encounter may later become a

12  seizure or detention when "by means of physical force or a show of authority [an individual's]

13  freedom of movement is restrained."  *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980);

14  *see also United States v. Ayarza*, 874 F.2d 647, 650 (9th Cir. 1989) ("[C]onversation may evolve

15  into a situation where the individual's ability to leave dissipates."); *United States v. Love*, 57 F.

16  App'x 751, 752 (2003) (unpublished).

17          When an officer detains a person, the officer must have a "reasonable and articulable

18  suspicion" that justifies the detention.  *Ayarza*, 874 F.2d at 650.  "An investigatory stop must be

19  justified by some objective manifestation that the person stopped is, or is about to be, engaged in

20  criminal activity."  *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see also United States v.*

21  *Thomson*, 282 F.3d 673 (9th Cir. 2002) (Detention "amounted to a permissible investigatory

22  detention which need only be based on the officers' reasonable suspicion that criminal activity

23  may be afoot.").  Based on the "totality of the circumstances," "detaining officers must have a

24  particularized and objective basis for suspecting the particular person stopped of criminal

25  activity."  *Id*. at 417-18; *Foster v. City of Indio*, 908 F.3d 1204, 1213 (9th Cir. 2018).

26          Svarda says that he was unlawfully detained as of the moment when he awoke to hear the

27  officers asking him to leave his car.  Dkt. No. 48 at 6; Dkt. No. 56 at 4.  The government says that

28  there was no detention until the officers removed Svarda from his car.  Dkt. No. 50 at 11-12.  The

United States District Court
Northern District of California

point need not be decided because the officers had reasonable suspicion sufficient to justify a stop before they tapped on the window. The officers approached the Acura because it matched the description of the car in the crime alert and video clips, and so they reasonably believed it may have been involved in the robbery. *See United States v. Hensley*, 469 U.S. 221, 232 (1985) (officers may base reasonable suspicion on fliers or bulletins "issued on the basis of articulable facts supporting a reasonable suspicion that [a] wanted person has committed an offense" and officers may ask a person question or detain a person "while attempting to obtain further information."). Then they saw in the car, before tapping on the window or speaking to Svarda, a baggie possibly full of cocaine. That was enough for the officers to proceed.

Svarda says that the parked Acura did not look like the car described in the alert, but the point is not well taken. He focuses on the claim that the parked Acura was missing the spare tire and a pink object tied to the windshield wiper. It is certainly true that general or generic descriptions of a vehicle may not be enough to justify a stop. *See, e.g.*, *United States v. Carrizoza-Gaxiola*, 523 F.2d 239, 241 (9th Cir. 1975); *United States v. Flores*, 808 F. App'x 445, 447 (9th Cir. 2020) (report of a grey Chevrolet Camaro with tinted windows did not create a reasonable suspicion that the defendant's car had been involved in criminal activity without matching other identifying features of the car) (unpublished). That is not the situation here. The parked Acura matched in several non-generic respects the vehicle described in the crime alert and shown in the video clips, namely the white decal in the "front windshield area," the black tire rims, and the different colored hood. These are details that matter because they are much less mutable than a spare tire or a pink object.[2] An exact match of every feature is not required to establish probable cause. *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010) ("neither certainty, nor proof

---

[2]  Svarda says there was no white decal, *see* Dkt. No. 48 at 7, but does not support that suggestion with any evidence. Sgt. Haymond stated in a declaration to the contrary, and included a photograph of the car on the night of December 6, 2018, which shows a white decal in the "front windshield area." Haymond Decl. ¶ 12. Consequently, Svarda has not raised a plausible evidentiary dispute about the decal. *Cohen v. United States*, 378 F.2d 751, 760 (9th Cir. 1967) ("[F]actual allegations which are general and conclusory or based upon suspicion and conjecture will not suffice."); *see also United States v. Ramirez*, 60 F. App'x 130, 131 (9th Cir. 2003) (unpublished) (To warrant an evidentiary hearing, the moving papers must "allege facts with sufficient definiteness, clarity, and specificity." (cleaned up)).

beyond a reasonable doubt, is required for probable cause to arrest" or for a reasonable suspicion

to detain) (quoting *United States v. Harvey*, 3 F.3d 1294, 1296 (9th Cir. 1993)).

The baggie of white powder in the car created a reasonable suspicion sufficient for a stop. Officer Thomson and Sgt. Haymond knew from their drug investigation experience that the baggie possibly contained cocaine. The baggie was in plain sight, and it is "well settled that visual observation by a law enforcement officer situated in a place where he has a right to be is not a search within the meaning of the fourth amendment." *United States v. Coplen*, 541 F.2d 211, 214 (9th Cir. 1976). It is also "beyond dispute that the action of a police officer shining his flashlight to illuminate the interior of a car, without probable cause to search the car, trenched upon no right secured by the Fourth Amendment." *United States v. Dunn*, 480 U.S. 294, 305 (1987) (internal quotations omitted) (quoting *Texas v. Brown*, 460 U.S. 730, 739-40 (1983)).

Svarda suggests that Officer Thomson did not shine his flashlight into the car until after Svarda was directed to open the car door, and that the officers did not discover the baggie until after Svarda had been unlawfully detained. Dkt. No. 48 at 9; Dkt. No. 56 at 4. The undisputed evidence shows otherwise. The declarations of Officer Thomson and Sgt. Haymond state that the officers saw the baggie of alleged cocaine before they woke Svarda. Thomson Decl. ¶ 14; Haymond Decl. ¶ 15. Officer Thomson stated that he shined his flashlight into the car because the crime alert indicated that one of the robbers had threatened to use a gun. Thomson Decl. ¶ 13. The incident reports from the night of December 6, 2018, also indicate that Officer Thomson observed the baggie before waking Svarda. Dkt. No. 49-2 at ECF 7, ECF 9. Svarda offers no evidence that contradicts these statements, or calls them into any question, and his speculations do not raise a material objection. *See Cohen v. United States*, 378 F.2d 751, 760 (9th Cir. 1967). In addition, Svarda's own statement of the case in his motion to suppress indicates that the officers looked into the windows before they asked Svarda to open the door to his car. *See* Dkt. No. 48 at 4.

## III.   THE SEARCHES WERE SUPPORTED BY PROBABLE CAUSE

Unless an exception applies, the Fourth Amendment requires police to obtain a warrant before a person or property may be searched. One exception is a search incident to a lawful arrest.

*See United States v. Cook*, 808 F.3d 1195, 1199 (9th Cir. 2015).  "Probable cause to arrest without a warrant exists when the facts and circumstances within the officers' knowledge are enough for a reasonable person to conclude that the suspect has committed a crime."  *Eberhard v. Cal. Highway Patrol*, No. 14-cv-01910-JD, 2015 WL 6871750, at *4 (N.D. Cal. Nov. 9, 2015).  This inquiry requires a "fair probability" that a crime has been committed.  *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986).  Probable cause is "not a high bar" and does not require consideration of all conceivable, relevant evidence.  *Kaley v. United States*, 571 U.S. 320, 338 (2014).

The record with respect to the baggie of white powder establishes probable cause to believe Svarda had committed a crime.  Upon approaching the car, the officers looked into the car.  Thomson Decl. ¶ 13.  Officer Thomson saw a baggie containing what he believed to be cocaine.  *Id*. at ¶ 14.  He alerted Sgt. Haymond, who agreed that the baggie contained cocaine.  Haymond Decl. ¶ 15.  Both officers were trained and experienced in the area of narcotics.  Thomson Decl. ¶ 5; Haymond Decl. ¶ 5.  They were familiar with the appearances of cocaine powder and cocaine base, and with how cocaine is typically packaged and sold.  Thomson Decl. ¶ 5; Haymond Decl. ¶ 5.  They were also familiar with the quantities of cocaine associated with personal use or for sale.  Thomson Decl. ¶ 5; Haymond Decl. ¶ 5.  Based on their training, the officers reasonably believed that the baggie contained cocaine and that the quantity was too great for personal use.  Thomson Decl. ¶ 14; Haymond Decl. ¶ 15.

This was enough for probable cause.  *See United States v. Nohara*, 3 F.3d 1239, 1242 (9th Cir. 1993).  Svarda again says that the officers did not use their flashlights to see the baggie until after they had detained and arrested him, Dkt. No. 48 at 9, but that does not carry the day for the reasons already discussed.

Following the arrest of Svarda, Sgt. Haymond searched Svarda's person while Officer Thomson searched the car.  Thomson Decl. ¶ 19; Haymond Decl. ¶ 20.  The search of Svarda's person, which was conducted within minutes of placing Svarda under arrest, was a search incident to lawful arrest.  "When an arrest is made, it is reasonable for the arresting officer to search the person arrested . . . ."  *United States v. Robinson*, 414 U.S. 218, 225-226 (1973) (quoting *Chimel v.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1 *California*, 395 U.S. 752, 762-63 (1969)); *see also United States v. Hartz*, 458 F.3d 1011, 1019

2 (9th Cir. 2006) (full search of the defendant's person was permissible as a search incident to

3 arrest).

4    The search of Svarda's car following his arrest was also lawful.  "[T]he Supreme Court

5 held that police 'may search a vehicle incident to a recent occupant's arrest only if the arrestee is

6 within reaching distance of the passenger compartment at the time of the search or it is reasonable

7 to believe the vehicle contains evidence of the offense of arrest.'"  *United States v. McCoy*, 398 F.

8 Supp. 3d 617, 622 (N.D. Cal. 2019) (quoting *Arizona v. Gant*, 556 U.S. 332, 351 (2009)), *aff'd*

9 2021 WL 4739645.  Although body camera footage from the night of the incident shows that

10 Svarda was already handcuffed and behind by the car when Officer Thomson searched the car, and

11 was not within reaching distance of the passenger compartment, *see id*., the officers observed the

12 baggie they believed to contain cocaine on the floor of the car prior to arresting Svarda.  Thomson

13 Decl. ¶ 13-14.  Svarda was placed under arrest for illegal possession of cocaine, and in light of the

14 baggie on the floor of the car, it was reasonable to believe that Svarda's car contained additional

15 "evidence of the offense arrest."  *See McCoy*, 398 F. Supp. 3d at 622.  Consequently, the search of

16 Svarda's car falls into the search incident to a lawful arrest exception of the Fourth Amendment as

17 well.

18    That is enough for present purposes, but it is also worth noting the automobile exception to

19 the Fourth Amendment's warrant requirement, which independently authorized the search of

20 Svarda's car in this case.  *See id*. at 622-23.  A police officer may conduct a warrantless search of

21 a vehicle where there is probable cause to believe the vehicle contains evidence of a crime.  *See*

22 *United States v. Ross*, 456 U.S. 798, 808 (1982) (An "individual's expectation of privacy in a

23 vehicle and its contents may not survive if probable cause is given to believe that the vehicle is

24 transporting contraband."); *Gant*, 556 U.S. at 347 ("If there is probable cause to believe a vehicle

25 contains evidence of criminal activity, [*Ross*] authorizes a search of any area of the vehicle in

26 which the evidence might be found.").  Probable cause exists when, based on the totality of the

27 circumstances, "there is a "fair probability that contraband or evidence of a crime will be found in

28 a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Officer Thomson's and Sgt.

Haymond's observation of the baggie they believed to contain cocaine provides probable cause under the automobile exception, as there was a "fair probability" that additional evidence of a crime would be found in Svarda's car.

**CONCLUSION**

The motion to suppress is denied.

**IT IS SO ORDERED.**

Dated:  October 25, 2021

_____
JAMES DONATO
United States District Judge