UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERIC HILL,<br><br>Defendant. | Case No. 3:20-cr-00329-JD-1<br><br>**ORDER RE MOTION TO SUPPRESS** |

Defendant Eric Hill asks to suppress evidence obtained from his cell phone and a Google email account pursuant to federal search warrants. Dkt. No. 92. The Court previously denied a motion to suppress a different search by Hill's co-defendant, Jazz Svarda. Dkt. No. 87.

Suppression is denied for the cell phone search. Because there is no "substantial preliminary showing" of material omissions or false statements in the application for the cell phone warrant, Hill's request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), is also denied. *See United States v. Rodriguez-Castorena*, No. 15-cr-345-JD, 2017 WL 513023, at *2 (N.D. Cal. Feb. 8, 2017). Suppression is granted for the Google account search.

**BACKGROUND**

The salient facts are not disputed. On November 21, 2018, two armed men wearing masks and hoods absconded with over 1,000 prescription pills, including oxycodone and hydrocodone, from a Walgreens pharmacy in San Francisco. Dkt. No. 93-1 ¶ 22-23 (cell phone warrant affidavit). On December 6, 2018, and December 18, 2018, defendants Svarda and Hill, respectively, were arrested and charged for the incident based on a video recording that allowed San Francisco Police Department officers to identify them by their clothing and the cars used to leave the scene. *Id.* ¶ 22. When Hill was arrested, SFPD officers found a firearm, and a jacket

1    and shoes matching those worn by one of the men during the incident. *Id*. ¶ 24. Hill also had a

2    cell phone in his possession. *Id*.

3          Prior to Hill's arrest, SFPD investigators had obtained a search warrant for cell-site

4    location and related information, which showed that Hill's cell phone was in the area of the

5    Walgreens at the time of the incident. *Id*. SFPD officers seized Hill's cell phone, and on January

6    2, 2019, obtained a California state warrant to access its contents. Dkt. No. 93-3.

7          After searching the cell phone pursuant to the warrant, the SFPD investigators sought and

8    obtained a state search warrant for the hill\_\_\_@gmail.com Google account on February 8, 2019.

9    Dkt. No. 93-4. The state warrant was based on the search of the cell phone, which had disclosed

10   the email address hill\_\_\_@gmail.com.[1] *Id*. at 5.

11         The evidence from the cell phone is said to show that Hill called Svarda on the morning of

12   the robbery, and that Hill and Svarda exchanged text messages on the morning of the robbery, and

13   texts about selling drugs, including the types of pills stolen from the Walgreens. Dkt. No. 96 at 2.

14   The contents of the Google accounts are said to show that Hill was in the area of the Walgreens at

15   the time of the robbery and that his path after the robbery was the same as the path of a car leaving

16   the scene. *Id*.

17         This is not Hill's first motion to suppress. Hill originally asked to suppress the state cell

18   phone and Google warrants, and all evidence obtained in connection with them. *See* Dkt. No. 46.

19   The main objections were that the warrants were overbroad and lacked sufficient particularity. *Id*.

20   at 5-7 (phone warrant); *id*. at 7-9 (Google warrant). The Court held a non-evidentiary hearing on

21   the suppression request, and expressed the tentative view that the affidavits for the state warrants

22   were thin, particularly with respect to Google. *See* Dkt. No. 58. The Court did not issue a final

23   decision on the matter because federal investigators from the Drug Enforcement Administration

24   sought a federal warrant for the phone, which was granted by a magistrate judge on May 7, 2021.

25   Dkt. No. 93-1. The Court concluded that this mooted the prior suppression motion. *See* Dkt. No.

26   72.

---

[1] The full email address for all accounts is redacted in the interest of privacy.

In June 2021, DEA agents subpoenaed Google for information about accounts associated with Hill's cell phone number. Dkt. No. 93-14. Google's response identified jimj___@gmail.com as an account associated with Hill's phone number. Dkt. No. 93-16. Google also produced subscriber information for that account, which identified hill___@gmail.com as the recovery email for the jimj___@gmail.com account. Dkt. No. 93-15. The DEA agents subsequently sought a federal warrant for the hill___@gmail.com Google account, which was issued on September 29, 2021. Dkt. No. 93-2.

In the present motion, Hill says that the second round of federal warrants was irredeemably tainted by information unlawfully acquired from the state warrants. In effect, Hill says that once the investigators saw the contents of the cell phone and the Google information, the federal applications were necessarily the fruits of a poisonous tree. Hill also says that the government did not seek the federal warrants until approximately two years after the seizure of the cell phone, which he believes invalidates the warrants, and renews a prior objection that the scope of the Google warrant was overbroad. *See* Dkt No. 92 at 15-19. He requested a hearing under *Franks v. Delaware* on the contention that both federal warrant applications contained materially false statements or omitted material information. *Id*. at 20-23.

**DISCUSSION**

**I.     THE FEDERAL CELL PHONE WARRANT**

Hill's main challenge to the cell phone warrant is based on the well-established principle that "the exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and, relevant here, 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). The Court did not formally conclude that the state warrant was invalid, and so the predicate element of illegality is not in evidence. For present purposes, the Court assumes without deciding that the state cell phone warrant was invalid. It is undisputed, as Hill notes, that the government affiant for the federal cell phone warrant acknowledged that he had "reviewed a copy of the contents" of Hill's cell phone pursuant to the state warrant. Dkt. No. 93-1 ¶ 3.

3

A finding of suppression does not follow ineluctably in these circumstances, as Hill urges. The question is not simply whether a prior Fourth Amendment violation may have occurred. Rather, the question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (quotation omitted). Evidence obtained independently of the alleged constitutional violation is admissible. *See Murray v. United States*, 487 U.S. 533, 537-38 (1988); *United States v. Heckenkamp*, 482 F.3d 1142, 1149 (9th Cir. 2007). "The focus," as our circuit has observed, "is on the causal connection between the illegality and the evidence." *United States v. Gorman*, 859 F.3d 706, 716 (9th Cir. 2017) (quotation omitted).

Hill has not established such a connection here. As the affidavit in support of the federal warrant application makes clear, all of the salient facts were in the possession of the government before the state warrant was obtained and Hill's phone was examined. The affidavit described the affiant's experience as a federal agent with cellular devices in drug trafficking investigations, and the type of information and evidence that can be found on drug trafficker's cellular devices. Dkt. No. 93-1 ¶¶ 19-21. It stated that Hill was identified as a suspect by clothing and cars captured on a surveillance camera, including video footage which showed Hill driving a Ford Focus before being picked up in an Acura. *Id.* ¶¶ 26, 28-29, 36. The footage showed a license plate number for the Ford Focus, which SFPD officers used to identify Hill from previous traffic stops. *Id.* ¶¶ 36-40. Officers found a telephone number in the records from those stops. *Id.* ¶ 39. They called the number, which was still active, and accessed a voicemail message suggesting that the number belonged to Hill. *Id.* Law enforcement obtained a search warrant for call detail records and cell-site location information for Hill's device and confirmed that Hill's phone was in the area of the Walgreens at the time of the robbery. *Id.* ¶ 40.

None of these facts was derived from the contents of Hill's cell phone. All of them were in existence and known to the government before the phone was seized and searched. Hill has not shown otherwise, or demonstrated that any specific statement in the affidavit was obtained from the contents of his phone. In addition, the affiant expressly stated that he had not relied on any

4

1    information obtained from the prior phone search, and that it was his practice to seek a federal
2    search warrant when evidence might exist on a cell phone or Google account irrespective of
3    whether a prior state warrant had been issued. Dkt. No. 96-1 ¶¶ 4-5. Hill did not meaningfully
4    challenge either statement. Consequently, it cannot be said that the prior illegal conduct Hill
5    alleges significantly directed the investigation to the evidence in question. *See Gorman*, 859 F.3d
6    at 716.

Hill's case citations do not point to a different conclusion. He relies heavily on *Gorman* and *United States v. Johns*, 891 F.2d 243 (9th Cir. 1989), but the circumstances in those cases could not be more different from the facts here. In *Johns*, officers obtained the identity of a driver and passenger during an illegal stop and search of a vehicle, and then used that identification to effect a seizure of marijuana. *Johns*, 891 F.2d at 244-45. In *Gorman*, an officer unlawfully prolonged a traffic stop and used suspicions developed during the detention to advise a separate law enforcement agency to conduct a second detention with a drug-sniffing dog. *Gorman*, 859 F.3d at 717. In each case, "the impetus for the chain of events" leading to the second search and seizure was clearly derived from the initial illegal action. *Id*. (quoting *Johns*, 891 F.2d at 245). The same is not the true for the federal cell phone warrant here.

## II.    THE TWO-YEAR DELAY

Hill's objection to the length of time before the federal warrant was sought is equally unavailing. Hill says that the government had his cell phone in its custody for approximately 27 months before the federal warrant was obtained. Dkt. No. 92 at 16.

An "unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights." *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). Determination of whether a delay was reasonable is based on "the totality of the circumstances," on a "case-by-case basis," and entails a balance of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*. (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

5

1    In other circumstances, the Court would likely have little trouble concluding that the
2 passage of over two years between the seizure of a phone and an application for a warrant would
3 raise serious concerns. But there is a good exculpatory explanation here. Hill was arrested by the
4 San Francisco Police Department on December 18, 2018. The state search warrant for Hill's
5 phone was issued on January 2, 2019. Dkt. No. 93-3. Hill's phone was the subject of a search
6 warrant within approximately two weeks of his arrest, which is reasonable by any measure.

7    The investigating agencies and officers were entitled to regard the state search warrant as
8 valid. *See United States v. Leon*, 468 U.S. 897, 918 (1984). Consequently, there was no need for
9 a federal warrant. This situation did not change until suppression proceedings were underway
10 before the Court. The record indicates that the application for the federal cell phone warrant was
11 submitted within approximately three weeks of the April 14, 2021, hearing at which the Court
12 expressed concerns about the state warrants. *See* Dkt. No. 58; Dkt. No. 93-1. That is hardly an
13 undue delay. Hill has not demonstrated otherwise, or shown prejudice from this sequence of
14 events.

### III. THE FEDERAL GOOGLE WARRANT

Hill raises a poisonous tree objection to the Google warrant. The Court will not take that up because the Google warrant was not supported by probable cause, and was little more than a fishing trip at the expense of Hill's privacy rights.

The determination of whether there was probable cause for a search warrant is based on the totality of the circumstances and a fair probability that contraband or evidence will be found in a particular place. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 246 (1983)). The Court's task is to "make a practical, common-sense decision," *United States v. Seybold*, 726 F.2d 502, 504 (9th Cir. 1984), on the evidence "contained within the four corners of a written affidavit given under oath," *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971). Conclusory statements by the affiant are not facts the Court can meaningfully evaluate or rely upon. *United States v. Underwood*, 725 F.3d 1076, 1082-83 (9th Cir. 2013).

The application for the federal Google warrant was based in large measure on responses Google made to a subpoena about the hill___@gmail.com account, and the jimj___@gmail.com account. Dkt. No. 93-2 ¶ 4. Google produced data indicating that the hill___@gmail.com account was a recovery account for jimj___@gmail.com, which was associated with Hill's cell phone number. *Id*. Payment information associated with the jimj___@gmail.com account showed that the account belonged to Hill. *Id*. The agent affiant stated that he had seen evidence obtained by the state Google warrant, but was not relying on it for the federal warrant. *Id*. ¶ 6. The affiant also stated that he was not relying on evidence from the federal or state phone searches. *Id*. ¶ 7.

What is missing from the affidavit are any facts establishing probable cause for accessing Hill's Google accounts. The affiant recounted the basic events of the Walgreens incident, *id.* ¶¶ 54-74, and said that, in his experience, Google accounts "may" be used for drug trafficking and other criminal offenses, *id*. ¶¶ 45-53. That is essentially all the affidavit contained in the way of facts, from which the affiant concluded that the accounts "may" contain relevant evidence. This is pure supposition, and not a showing of a fair probability that the Google accounts were connected in any way to the incident, or would lead to something useful as evidence. As the affiant's speculation implicitly acknowledges, it is equally probable that the accounts contained content that the government had no right to see. The mere association of Hill's cell phone with the accounts is not in itself probable cause for the government to peruse them for incriminating evidence.

There is also a serious concern that the warrant was overbroad and improperly allowed the government to do a "general, exploratory rummaging" through Hill's Google accounts. *See In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991). This concern is particularly acute for email and other online information. "Searches of electronic records pose unique challenges for "striking the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures." *United States v. Schesso*, 730 F.3d 1040, 1042 (9th Cir. 2013) (quoting *United States v. Comprehensive Drug Testing, Inc. (CDT III)*, 621 F.3d 1162, 1177 (9th Cir. 2010)). "Because electronic devices could contain vast quantities of intermingled information, raising the risks

inherent in over-seizing data, law enforcement and judicial officers must be especially cognizant of privacy risks when drafting and executing search warrants for electronic evidence." *Id*. (citing *CDT III*, 621 F.3d at 1177).

The affidavit for the federal Google warrant manifests this danger. It requests all manner of information about Hill's Google accounts, including email communications, contacts, calendars, messaging services, photos, location information, payment records, and more. Dkt. No. 93-2 Attch. B. These sweeping requests are untethered to the Walgreen's incident, and represent an unwarranted intrusion into Hill's privacy rights.

Overall, the Google warrant was improvidently issued, and vastly overbroad. All evidence obtained by the government in connection with the warrant is suppressed. *See United States v. Cardwell*, 620 F.2d 75, 78 (9th Cir. 1982).

## IV.   AN EVIDENTIARY HEARING IS NOT WARRANTED

Hill requests a hearing under *Franks*, on the grounds that the government made false statements or omissions in its affidavits supporting the two federal warrants. Dkt. No. 92 at 19-23. Because the Google evidence is suppressed, the Court considers only whether a *Franks* hearing is warranted for the federal phone warrant.

To merit a hearing, Hill had to establish by a preponderance of the evidence that (1) "the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant," and (2) "the false or misleading statement or omission was material, i.e., necessary to finding probable cause." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (internal quotations omitted).

Hill did not meet these elements. He makes the rather odd comment that the affidavit was materially misleading because they sought evidence that the federal agent knew was not on the phone from the prior search under the state warrant. Dkt. No. 92 at 20, 23. In effect, Hill faults the government for not relying on what he characterized as an illegal prior search, which is entirely inconsistent with his contention that the federal warrant was illegal because it did rely on that search. This is not an issue that requires a *Franks* hearing.

8

It also bears emphasis that the salient facts in the affidavit for the federal cell phone warrant are undisputed statements about the Walgreen's incident and the investigatory follow-up. None of these statements is subject to genuine dispute, and none raise a credibility issue, such that a hearing might be warranted.

Hill says that the affidavit omitted information about a search of Svarda's phone, which did not yield any communications with Hill's phone number or email. Dkt. No. 92 at 21-22. But the record indicates that investigators were unable to unlock the phone. Dkt. No. 93-7 at ECF 7. In addition, the possibility that Svarda's SIM card did not show communications with Hill would not, in itself, rule out that Hill's phone and SIM card might. Consequently, the alleged omission would not have been materially misleading to a magistrate judge reviewing the affidavit.

**IT IS SO ORDERED.**

Dated: July 8, 2022

JAMES DONATO
United States District Judge